

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIE OSBORN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-080-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the above-captioned action wherein Julie Osborn is plaintiff and the Commissioner of Social Security, currently Michael J. Astrue,[1] is defendant. The court has carefully considered the proposed findings, conclusions, and recommendation of the United States Magistrate Judge ("FC&R"), plaintiff's objections to same, and the evidence. For the reasons given below, the court has concluded that plaintiff's objections lack merit.

I.

Standards of Review

Pursuant to 42 U.S.C. § 405(g), the only issues before the court are whether the final decision of the Commissioner that plaintiff is not disabled within the meaning of the Social

---

[1] On February 12, 2007, Michael J. Astrue succeeded Jo Anne B. Barnhart, the defendant named in the complaint, as the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue is thus automatically substituted as the proper party.

Security Act is supported by substantial evidence, and whether the decision complies with applicable legal standards. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. Richardson v. Perales, 402 U.S. 389, 390 (1971). The court may not reweigh the evidence or substitute its opinion for that of the Commissioner, but must scrutinize the record in its entirety to ascertain whether substantial evidence exists to support the Commissioner's findings. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987).

Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Crouchet, 885 F.2d at 204. In determining whether the Commissioner's decision is supported by substantial evidence, the court considers (1) objective medical facts and clinical findings, (2) diagnosis of examining physicians, (3) subjective evidence of pain and disability as testified to by the claimant, and (4) the claimant's age, education, and work history. Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A June 1981). "[N]o substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

Once the magistrate judge has issued his proposed findings, conclusions, and recommendations, and the plaintiff has made

objections thereto, the district judge makes a <u>de novo</u> determination of those portions of the magistrate judge's specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court now makes that determination in the context of the basic principles mentioned above.

## II.

## Background

In 2002 plaintiff was diagnosed with fibromyalgia by rheumatologist Iman Ali, M.D., who referred her for rehabilitation services including physical therapy. In that same year neurologist Kevin Connor, M.D., treated plaintiff for a seizure disorder. Connor had diagnosed plaintiff with complex partial seizures and had repeatedly instructed her to take her medication as prescribed, but apparently was unable to convince plaintiff to do so. Also in 2002, physician Patrick Collini, M.D. ("Collini"), ordered an intravenous pyelogram to be performed on plaintiff to evaluate her interstitial cystitis. Collini referred plaintiff to urologist Marie-Blanche Tchetgen, M.D. ("Dr. Tchetgen"). Dr. Tchetgen prescribed medication for plaintiff's complaints of bladder and pelvic pain and urinary urgency, and scheduled her for a follow-up visit after three months.

At a follow up visit on August 12, 2002, Dr. Tchetgen was still in the process of adjusting her medication, but Osborn

3

reported significant improvement in her symptoms. In March of 2003 Osborn reported increasingly severe symptoms and on July 29, 2003, Dr. Tchetgen performed surgery on her to place an implantable pulse generator ("IPG") to further treat her interstitial cystitis.

In October of 2003 Osborn reported that her symptoms had significantly improved from the year before but that she still had good days and bad days. In November the IPG was adjusted to try and improve Osborn's symptoms of pelvic pressure, pain, urgency, and frequency. In a visit with Dr. Tchetgen in January of 2004 Osborn reported her symptoms to be mild and that she was doing well. On March 5, 2004, Osborn described her interstitial cystitis as somewhat improved and believed that she had experienced remarkable improvement in the previous two days due to her new anti-seizure medication.

On April 22, 2004, Dr. Tchetgen filled out a "Clinical Assessment of Pain" in order to report Osborn's functioning level. The following are the questions accompanied by the answers that were circled by Dr. Tchetgen:

    1. To what extent is pain significance [sic] in the treatment of this patient?

        C. Pain is present to such an extent as to be distracting to adequate performance of daily activities or work.

    2. To what extent will physical activity, such as walking, standing, sitting, bending, stooping, moving of extremities, etc., increase the degree of pain experienced by this patient?

   C. Greatly increased pain to such a degree as to cause some distraction from task or total abandonment of task.

 3. In your best judgment, to what extent will the side effects or prescribed medication impact upon this patient's ability to perform his/her work?

   C. Drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, and etc.

Record 247-48. In addition to the clinical assessment, Dr. Tchetgen completed a "Medical Source Statement" to indicate Osborn's (1) ability to sit, stand, walk, balance, and stoop for certain periods of time, (2) need to rest, (3) ability to lift and carry objects, and (4) ability to repetitively use her hands.[2] Record 249-53.

Based upon her purported inability to engage in substantial gainful activity, Osborn filed applications with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits. After her applications were denied, Osborn sought reconsideration and a hearing with the SSA.

A hearing was subsequently held on May 27, 2004, in Fort

---

[2] Specifically, Dr. Tchetgen opined that (1) Osborn could sit continuously for a maximum period of 15 minutes, needed to stand or walk about for less than 15 minutes before returning to a seated position, and could sit for a total cumulative time of 2 hours per day; (2) Osborn could stand or walk about for a maximum period of 30 minutes before lying down or reclining, needed to lie down or recline for 1 hour before returning to standing or walking about for the maximum period, and could stand or walk about for a total cumulative period of 2 hours per day; (3) Osborn needed to rest, in addition to a morning break, lunch period, and an afternoon break scheduled at approximately 2 hour intervals, to relive pain arising from her documented medical impairment, and that she needed to rest lying down or reclining for a total cumulative period of 4 hours per day, although that period would vary depending on Osborn's pain level on that day; (4) Osborn could lift and carry 1 to 5 lbs. frequently, 6 to 20 lbs. occasionally, and 21 to 50 lbs. rarely or not at all; (5) there were no necessary restrictions on Osborn's balancing or repetitive use of her hands; and (6) Osborn could occasionally stoop, meaning bending down and forward at the waist. Record 249-53.

5

Worth, Texas, before James Wendland, an Administrative Law Judge ("the ALJ"). Osborn testified, as did, at the ALJ's request, Carol Bennett, a vocational expert. On July 30, 2004, by written decision, the ALJ outlined his reasons for concluding that, although Osborn's residual functioning capacity was reduced to sedentary level work with additional restrictions, she was not disabled within the meaning of the Social Security Act. Record 11-16. On November 25, 2005, the appeals council of the SSA denied Osborn's request for review of the ALJ's decision, noting that: "[t]his means that the [ALJ's] decision is the final decision of the Commissioner of Social Security in your case." Record 3. This action ensued.

III.

Osborn's Specific Objections to the FC&R

Osborn makes two specific objections to the FC&R. She objects to the magistrate's conclusions that the ALJ (1) properly weighed the opinion of Osborn's treating physician and (2) properly concluded that substantial evidence existed to support the ALJ's finding that Osborn is not disabled.

A.  Osborn's Physician

Osborn's treating physician, Dr. Tchetgen, opined, with regard to Osborn's residual functional capacity ("RFC"), that plaintiff's symptoms related to her interstitial cystitis and seizures were severe enough to limit her to 2 hours of sitting and 2 hours of standing or walking about per 8 hour work day. Further, Dr. Tchetgen said that Osborn needed 4 hours per 8 hour

work day to rest to relieve pain, depending on her pain level on that particular day. However, the ALJ disregarded Dr. Tchetgen's opinion that Osborn needed 4 hours of rest per 8 hour work day stating that such opinion was "not only unsupported, but also contradictory to the medical records submitted post-surgery." Record 15-16. While the opinion of a treating physician is normally afforded considerable weight in determining disability, the ALJ may give less weight to a treating physician's opinion when that opinion is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985); Perez v. Barnhart, 415 F.3d 457, 465-466 (5th Cir. 2005). Applying those factors here, the court is amply satisfied that the ALJ's decision to disregard Dr. Tchetgen's opinion related to Osborn's need for rest was a sound one.

A thorough review of the evidence indicates that the conclusion expressed by Dr. Tchetgen in her April 24, 2002, written assessments that Osborn needed 4 hours of rest per 8 hour work day was not supported by Osborn's medical records or Dr. Tchetgen's post-surgical observations. The objective medical evidence, as opposed to Osborn's subjective complaints, does, just as the ALJ found, contradict the assessment of Osborn's need for rest made by Dr. Tchetgen. Following Osborn's surgery performed by Dr. Tchetgen on July 29, 2003, Dr. Tchetgen observed that Osborn's symptoms had improved. In October of 2003 the IPG was

adjusted and again Dr. Tchetgen reported that Osborn's symptoms were improved.  Dr. Tchetgen saw Osborn in January of 2004 and reported that: "Overall she appears to be doing very well.  The patient told me she is satisfied with the current status and treatment."  Record 211.  Further, Osborn went for a follow-up visit on March 5, 2004, and Dr. Tchetgen reported that her condition was "somewhat improved" and that "[w]ithin the last two days, she has had a remarkable improvement".  Record 209.  While Osborn's medical records indicate that her condition had, at least for the most part, steadily improved since the IPG was implanted, the assessments filled out by Dr. Tchetgen in April of 2004 indicated that Osborn's pain was so severe as to require 4 hours of rest per 8 hour work day.  Osborn reported that she was "satisfied with her current status and treatment" in January and her records state that her symptoms continued to improve after that.  While she testified at the hearing that her symptoms were much worse, the court agrees with the ALJ's finding that such complaints are unsupported by her medical records and are therefore lacking credibility.  Thus, there is substantial evidence that supports the ALJ's finding that Osborn's symptoms and pain were not so severe as require 4 hours of rest per 8 hour day.

The ALJ is entitled to determine the credibility of lay witnesses, as well as medical experts, including treating physicians, and weigh their opinions accordingly.  See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).  The ALJ did just

that here and did it well. His conclusion that Osborn's allegations were not totally credible and his decision to disregard Dr. Tchetgen's finding that Osborn needed 4 hours of rest per 8 hour work day, are firmly supported by substantial evidence in the record. Thus, the court accepts the FC&R with respect to Dr. Tchetgen's opinion.

B.  Osborn's Disability

Secondly, Osborn objects to the magistrate judge's finding that she is not disabled. Osborn argues that the vocational expert testified that if all of Dr. Tchetgen's opinions were accepted, Osborn's condition would result in an inability to sustain employment. However, because the court has affirmed the finding that disregarded Dr. Tchetgen's opinion related to Osborn's need for rest, Osborn's argument with respect to the magistrate judge's finding of disability is without merit.

IV.

Conclusion and Order

For the reasons stated above, the court concludes that all of Osborn's objections to the FC&R lack merit. Therefore, the court accepts the magistrate judge's proposed findings, conclusions, and recommendations. Consistent therewith,

The court ORDERS that the Commissioner's decision be, and is hereby, affirmed.

SIGNED July 13, 2007.

_____
JOHN McBRYDE
United States District Judge